**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


Michael R. Donlon

      v.                             Civil No. 10-cv-559-PB

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections[1]


**REPORT AND RECOMMENDATION**


     Before the Court is Michael Donlon's complaint (doc. no.
1), filed pursuant to 42 U.S.C. § 1983, alleging violations of
his First, Fourteenth, and Eighth Amendment rights, as well as
his rights under state law.  The matter is presently before me
for preliminary review to determine whether or not the complaint
states any claim upon which relief might be granted.[2]  See 28
U.S.C. § 1915A (requiring court to screen prisoner civil
actions); United States District Court District of New Hampshire
Local Rule ("LR") 4.3(d)(2) (authorizing magistrate judge to

---

    [1]In addition to O'Mara, Donlon names Hillsborough County
Department of Corrections Assistant Superintendent David Dionne,
Nurse Denise Ryan, Dr. Matthew Masewic, and Corrections Officer
Raymond (first name unknown) as defendants to this action.

    [2]Also pending before the Court is plaintiff's motion for
preliminary injunctive relief (doc. no. 9).  This Report and
Recommendation, and the Order issued simultaneously therewith
directing service of the complaint, do not address plaintiff's
request for preliminary injunctive relief.  The findings here
pertain only to the statutorily required initial review of
prisoner-filed pleadings.  See 28 U.S.C. § 1915A.

conduct preliminary review of complaints filed by prisoners).

As fully explained herein, the Court recommends that Donlon's

Fourteenth Amendment due process claim be dismissed.  In an

Order issued simultaneously with this Report and Recommendation,

the Court directs service of Donlon's Eighth Amendment medical

care claim, First Amendment retaliation claim, and state law

medical negligence claim on defendants.

Standard of Review

Under this Court's local rules, when an incarcerated person

commences an action pro se and in forma pauperis, the Magistrate

Judge conducts a preliminary review.  LR 4.3(d)(2).  In

conducting the preliminary review, the Court construes all of

the factual assertions in the pro se pleadings liberally,

however inartfully pleaded.  See Erickson v. Pardus, 551 U.S.

89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429

U.S. 97, 106 (1976), to construe pro se pleadings liberally in

favor of the pro se party).  "The policy behind affording pro se

plaintiffs liberal interpretation is that if they present

sufficient facts, the court may intuit the correct cause of

action, even if it was imperfectly pled." Ahmed v. Rosenblatt,

118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United

States, 540 U.S. 375, 381 (2003) (courts may construe pro se

pleadings to avoid inappropriately stringent rules and

2

unnecessary dismissals).  This review ensures that pro se
pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon
which relief could be granted, the Court must consider whether
the complaint, construed liberally, <u>Erickson</u>, 551 U.S. at 94,
"contain[s] sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
<u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949
(2009) (citation omitted).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged."  <u>Id.</u> at 1949.  Inferences
reasonably drawn from the plaintiff's factual allegations must
be accepted as true, but the Court is not bound to credit legal
conclusions, labels, or naked assertions, "devoid of 'further
factual enhancement.'"  <u>Id.</u>  (citation omitted); <u>see Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("Factual allegations
must be enough to raise a right to relief above the speculative
level, on the assumption that all the allegations in the
complaint are true (even if doubtful in fact)."); <u>Sepúlveda-
Villarini v. Velázquez-Torruella</u>, ___ F.3d ___, ___, 2010 WL
5093220, *3 (1st Cir. 2010) ("The make-or-break standard . . .
is that the combined allegations, taken as true, must state a
plausible, not a merely conceivable, case for relief.").  The

plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  Bell Atl. Corp., 550 U.S. at 556. Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 129 S. Ct. at 1950 (citation omitted).

## Background[3]

### A.   Medical Care

On March 28, 2010, Donlon was transferred to the Hillsborough County House of Correction ("HCHC") from the Rockingham County House of Correction ("RCHC").  At the time he was transferred, the RCHC medical department had diagnosed him with Type II diabetes and placed him on oral medication.  Donlon states that shortly after Donlon arrived at the HCHC, HCHC physician Dr. Matthew Masewic removed Donlon from the diabetes medication and ordered Donlon's blood sugar to be checked once a

---

[3]The facts recounted here, except where otherwise noted, are construed from plaintiff's written pleadings, and do not include additional evidence presented at the January 3, 2011, hearing on plaintiff's motion for preliminary injunctive relief.

day, in the morning.[4]  Donlon complained that his blood sugar levels did not feel compromised in the morning, and requested blood sugar tests in the afternoon, when he felt that his blood sugar tended to be out of normal range.  The HCHC medical personnel refused this request.  Shortly thereafter, Donlon began to experience migraine headaches, dizziness, fatigue, and lethargy.  Donlon also lost a significant amount of weight – 45 pounds – within a few months of being removed from his medication.

Donlon filed numerous medical request slips with HCHC Medical Department Administrator Denise Ryan complaining of his symptoms and requesting medical treatment.  Donlon's medical request slips were not answered.  Although Donlon was repeatedly told that he had been placed on a list to see Dr. Masewic, he did not see him for several months.[5]  Donlon sent grievances to HCHC Superintendent James O'Mara, but the grievances were not resolved to his satisfaction.  Donlon feels that HCHC personnel neither took his complaints seriously nor took appropriate action to address his concerns.

---

[4]The undisputed evidence at the January 3, 2011, hearing was that Donlon's blood sugar level was tested once a week, in the morning, for the month of May 2010.  No further blood sugar testing was done by the HCHC Medical Department until October 27, 2010.

[5]The testimony at the January 3, 2011, hearing indicated that, as of the date of the hearing, Donlon had last seen Dr. Masewic at the end of July 2010.

At the end of October 2010, Donlon was sent to the Elliot
Hospital because of his blood sugar levels.  Donlon spent two
days at the hospital, during which time doctors could not
control Donlon's blood sugar level with oral medication.
Doctors at the hospital gave Donlon injected insulin and advised
Donlon that he had become insulin dependent.  Donlon asserts
that the progression of his illness was the result of being
improperly removed from oral medication by Dr. Masewic, and from
not being properly treated by HCHC medical personnel when he
presented symptoms of diabetes, such as headaches, fatigue,
dizziness, and lethargy.  Donlon contends that Ryan, Masewic,
O'Mara, and HCHC Assistant Superintendent David Dionne were
aware of the deficiencies in Donlon's medical care, due to
medical request slips and grievances filed, and failed to act to
remedy the situation.

## B.   Retaliatory Housing Placement

When Donlon returned from the hospital, he was placed on
the HCHC medical unit so that he could be monitored by medical
staff until he was medically cleared to return to another
housing unit.  Donlon was in the HCHC medical unit for eleven
days, during which time he filed four grievances.  At the end of
eleven days, Donlon was moved to the HCHC maximum security unit.

Donlon, having no unresolved disciplinary tickets, asked HCHC Classifications Officer Raymond why he was being moved to maximum security.  Raymond told Donlon that he was being moved to maximum security because Donlon had reported to medical staff that he had eaten a donut, and HCHC personnel wanted to insure that Donlon did not eat any more donuts.  Donlon asked members of the medical staff why he had been placed in maximum security, and was told that the medical staff was not responsible for that housing placement.

Donlon then asked HCHC Discipline Officer Fournier why he was placed on maximum security.  Fournier told Donlon that Dionne had personally placed Donlon in the maximum security unit, and only Dionne or O'Mara could clear Donlon to move off of that unit.  Donlon asserts that his move to maximum security, coming on the heels of his filing three or four grievances regarding his medical care, was a retaliatory act by Dionne, taken to punish him for filing the grievances.  Further, Donlon claims that he is unable to properly regulate his blood sugar levels in maximum security, as he has no access to commissary food that he can use to raise his blood sugar level when it dips too low, and cannot always get the attention of the security staff on the unit to request prompt medical attention.

Donlon claims that he spoke with Officers Raymond and Fournier, and filed a request to speak with Dionne regarding his

placement in maximum security, but has received no helpful response.  Donlon claims he was not afforded any hearing or other process either before or after being moved to maximum security.  Donlon claims that in maximum security, he is denied privileges available to other sentenced inmates at the jail, including schooling, law library access, programming, religious bible study, and the ability to purchase commissary food.

Donlon now brings this action, asserting the following claims for relief[6]:

1.   Defendants have violated Donlon's Eighth Amendment rights by denying him constitutionally adequate medical care by:

a.   Improperly delaying appropriate care for Donlon's diabetic symptoms and diabetes; and

b.   Housing Donlon on a unit where he is unable to obtain adequate medical care because he cannot regulate his own blood sugar or consistently contact medical staff in a timely manner when he is need of immediate attention to his disregulated blood sugar level.

2.   Defendants have retaliated against Donlon in violation of his First Amendment rights, by housing him in unnecessarily

---

[6]The claims, as identified herein, will be considered to be the claims raised in this case for all purposes.  If Donlon objects to the claims as identified here, he must do so by filing a timely objection to this Report and Recommendation or by properly moving to amend his complaint.

restrictive conditions in order to punish him for filing grievances against the HCHC Medical Department.

3.   Defendants have denied Donlon due process guaranteed by the Fourteenth Amendment by failing to provide any process to Donlon either before or after moving him to maximum security for a non-disciplinary reason.

4.   Defendants have violated Donlon's rights under state law by acting negligently in providing him medical care for diabetes.

Discussion

I.   <u>42 U.S.C. § 1983</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.   <u>See</u> 42 U.S.C. § 1983[7]; <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).   Here, Donlon claims that the defendants, all state actors, have violated rights accruing to

_____

[7]42 U.S.C. § 1983 provides that:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

9

him under federal law.  As such, the federal claims in this
action arise under § 1983.

II.  Medical Care

"[T]he treatment a prisoner receives in prison and the
conditions under which he is confined are subject to scrutiny
under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25,
31 (1993); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir.
1999).  The pertinent Eighth Amendment prohibition on cruel and
unusual punishment applies to the states through the Due Process
Clause of the Fourteenth Amendment.  See Robinson v. California,
370 U.S. 660, 666-67 (1962).

The Supreme Court has adopted a two-part test for reviewing
medical care claims under the Eighth Amendment.  See Farmer v.
Brennan, 511 U.S. 825, 834 (1994).  A court must first determine
if the prisoner has alleged facts sufficient to show that he or
she has not been provided with adequate care for a "serious
medical need."  Id.  A serious medical need is one that involves
a substantial risk of serious harm to the prisoner if it is not
adequately treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281,
285 (D.N.H. 2003); see also Gaudreault v. Mun'y of Salem, 923
F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as
one "that has been diagnosed by a physician as mandating

treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

Second, the court must determine if the complaint contains sufficient allegations to show that defendants acted with deliberate indifference.  See id.  Allegations that simply show "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).  To be found deliberately indifferent, a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference.  See Farmer, 511 U.S. at 837.  Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'"  Ruiz-Rosa, 485 F.3d at 156 (citation omitted).  "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain."  Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (internal citation and quotations omitted).  Deliberate indifference may be found "in wanton decisions to deny or delay care, where the action is recklessness, not in the tort law sense but in the

appreciably stricter criminal-law sense." <u>Watson v. Caton</u>, 984
F.2d 537, 540 (1st Cir. 1993) (internal citation and quotations
omitted).  Deliberate indifference is not demonstrated by an
inmate's disagreement with his treatment, by an allegation that
better treatment than what was provided is available, or by a
difference of opinion among medical professionals regarding
diagnosis and treatment.  <u>See</u> <u>Feeney v. Corr. Med. Servs.</u>, 464
F.3d 158, 162 (1st Cir. 2006) ("when a plaintiff's allegations
simply reflect a disagreement on the appropriate course of
treatment, such a dispute with an exercise of professional
judgment may present a colorable claim of negligence, but it
falls short of alleging a constitutional violation" (citation,
quotations and additional punctuation omitted)).

A.   <u>Serious Medical Need</u>

Here, Donlon alleges that he is a diabetic who has been
treated with insulin, has suffered serious symptoms related to
his diabetes, and has become insulin dependent.  Donlon has
alleged that he has, and has had during his incarceration at the
HCHC, a serious medical condition requiring treatment.

B.   <u>Adequate Medical Care</u>

Donlon alleges that he was provided with inadequate medical
care.  He states that the HCHC medical personnel insisted on
testing his blood sugar in the morning, after being told that it

was most likely to be irregular in the afternoon.  Donlon further alleges that he was improperly removed from his oral medication, ultimately resulting in a serious disregulation in his blood sugar levels causing him to be hospitalized.  Donlon alleges that since shortly after his hospitalization, he has been held in a unit at the HCHC where he cannot get access to food to regulate his own blood sugar or to jail staff to obtain prompt medical care.  As a result, Donlon alleges that his blood sugar levels have been allowed to drop to unsafe levels.  As his claims indicate that he has not received care sufficient to insure his health and safety while at the HCHC, Donlon has alleged sufficient facts to demonstrate that he has not received adequate care for his serious medical needs.

     C.   <u>Deliberate Indifference</u>

    To state a claim for an Eighth Amendment violation, Donlon must demonstrate not only that the care he received was inadequate to treat his serious medical needs, he must also demonstrate that the failure to provide adequate care was the result of the "deliberate indifference" of the defendants.  <u>See</u> <u>Braga</u>, 605 F.3d at 61.  Here, Donlon asserts that a doctor decided to take him off of his previously prescribed medication, and to monitor Donlon's blood sugar level by testing it once a week, in the morning, for only one month.  Further, Donlon has

alleged that when his blood sugar level became disregulated, the HCHC staff sent him to a hospital where he received treatment. After returning to the HCHC from the hospital, Donlon was placed on the medical unit where he was closely monitored.  Donlon does not claim that he was not treated at all, but that his treatment was significantly delayed, that the medical staff at the HCHC should have been aware of the danger of such a delay based on Donlon's prior diabetes diagnosis and his complaints of symptoms that often accompany diabetes, and that the medical and administrative staff at the HCHC ignored his medical requests and grievances, resulting in harm to Donlon in the form of pain and suffering, and a permanent worsening of his condition.

As described in the complaint, Donlon sets out an initial failure to treat his diagnosed diabetes, followed by a months-long delay in treatment for reported symptoms.  Further, Donlon alleged that the medical staff had actual knowledge of his diagnosis and symptoms, and any medical professional would have known of the likelihood of impending harm in failing to treat symptomatic diabetes, and the ease of preventing that harm by providing him with treatment.  These allegations, standing alone, assert a claim of "'recklessness,'" or a "'wanton decision to deny or delay care,'" subjecting defendants to liability under the Eighth Amendment.  Feeney, 464 F.3d at 162 (quoting Watson, 984 F.2d at 540).  Accordingly, Donlon has

14

stated sufficient facts to state an Eighth Amendment claim
alleging deliberate indifference in the provision of medical
care at the HCHC upon which relief might be granted, and the
Court will direct service of this claim against defendants Ryan,
Masewic, O'Mara and Dionne in a simultaneous Order.[8]

### D.   Supervisory Liability

Donlon names O'Mara and Dionne as defendants to the Eighth
Amendment claim in their supervisory capacity.   Donlon states
that he grieved the lack of adequate medical care he was
receiving to O'Mara, and that Dionne personally dealt with the
grievances.   Donlon alleges, in short, that O'Mara and Dionne
were alerted to the denial of adequate medical care Donlon

---

[8]The Court has additional information in this case, as
Donlon filed a motion for preliminary injunctive relief, a
hearing was held on that motion, and testimonial and documentary
evidence was accepted by the Court.  The evidence at the hearing
indicated that Donlon was not ignored entirely during the months
preceding his hospitalization, as the complaint implies.
Donlon, at the hearing, conceded that he had received some
attention from the HCHC medical staff throughout his stay there.
Donlon's complaints regarding headaches and other symptoms were
addressed, to some degree, although they were not generally
attributed to diabetes.  While Donlon did not see the HCHC
physician as often as he requested, he did see him several times
between April 2010 and July 2010.  The physician examined and
diagnosed Donlon and made decisions about how and when to treat
Donlon.  Donlon did not agree with many of those assessments,
diagnoses or treatment decisions, but no civil rights action
arises out of his disagreement alone.  See Feeney v. Corr. Med.
Servs., 464 F.3d 158, 162 (1st Cir. 2006).  Accordingly, it
appears that Donlon's Eighth Amendment claim, while sufficiently
set forth in the complaint to survive preliminary review, may
not ultimately be successful.

suffered, and the deliberate indifference with which he claims

he was treated, and failed to take steps to remedy the situation

or assure that Donlon received constitutionally adequate medical

care.  Donlon has stated sufficient facts to assert Eighth

Amendment claims against O'Mara and Dionne in their supervisory

capacities.  See Maldonado v. Fontanes, 568 F.3d 263, 274-75

(1st Cir. 2009) (supervisory liability under a theory of

deliberate indifference "'will be found only if it would be

manifest to any reasonable official that his conduct was very

likely to violate an individual's constitutional rights.'"

(internal citation omitted)).  Accordingly, the Court will

direct that the Eighth Amendment claim proceed against O'Mara

and Dionne in a simultaneous Order.

     E.   Negligence and Medical Malpractice

     Donlon has also set forth sufficient facts to state a

negligence claim based on medical malpractice under state tort

law.  To assert such a claim, plaintiff must allege that a

medical care provider failed to act in accordance with a

standard of reasonable professional practice in the provider's

profession or specialty, and that as a proximate result thereof,

plaintiff suffered injuries which would not otherwise have

occurred.  See Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d

209, 214 (2010) (citing N.H. Rev. Stat. Ann. § 507-E:2).  Donlon

has alleged that Denise Ryan and Dr. Masewic, his medical care providers at the HCHC, provided him with substandard medical care, which was the proximate cause of the injuries he sustained, including a permanent worsening of his condition as well as pain and suffering.  The complaint further indicates that proper care might have included altering the timing of blood sugar tests, more closely monitoring Donlon's blood sugar levels, and allowing Donlon access to the means by which he could adequately control his blood sugar level.  Accordingly, the Court finds that Donlon has alleged sufficient facts to state a medical malpractice claim against Ryan and Masewic.

Donlon, by alleging that O'Mara and Dionne, as the HCHC Superintendent and Assistant Superintendent, were responsible for the actions of subordinates, properly names O'Mara and Dionne as defendants to the state law negligence claim under a theory of respondeat superior.  Accordingly, the Court will direct service of this claim against O'Mara and Dionne.

III. <u>Retaliation</u>

Donlon claims that in the eleven days he spent in the HCHC medical unit after his hospitalization, he filed four grievances that were submitted to O'Mara and reviewed by Dionne.  The day after filing his last two grievances, Donlon was moved into maximum security at the behest of Dionne.  Donlon had not

17

committed any disciplinary violation that would explain or justify the move to maximum security.  HCHC Disciplinary Officer Fournier advised Donlon that only O'Mara or Dionne could authorize his move out of maximum security.  Donlon states that he was told to appeal the reclassification to HCHC Classifications Officer Raymond, which he did to no avail. Donlon now asserts that the move to maximum security was an act of retaliation for the grievances he filed.

The First Amendment shields prisoners from being retaliated against for engaging in protected speech.  See Ortiz v. Jordan, ___ U.S. ___, ___, 2011 WL 197801, *6 (Jan. 24, 2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). "'[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citation omitted); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (prison officials cannot lawfully impose disciplinary sanction against prisoner in retaliation for prisoner's exercise of his constitutional right); Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) ("actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms").

18

The First Amendment's protection of the right to petition the government for a redress of grievances includes "access of prisoners to the courts for the purpose of presenting their complaints," Rhodes v. Chapman, 452 U.S. 337, 362 n.9 (1981) (internal citations omitted), as well as redress under established prison grievance procedures.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing of disciplinary charge against inmate, not otherwise actionable, is actionable under § 1983 if filed in retaliation for filing a grievance pursuant to established administrative grievance procedures); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988) (right to petition "applies with equal force to a person's right to seek redress from all branches of government" and prisoner "should not be any less entitled to relief under section 1983 because he was addressing his complaints to a state administrative agency rather than to a court of law").

In order to state a claim for retaliation for exercising his First Amendment rights, Donlon must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment, (2) some adverse action at the hands of the prison officials, and (3) a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Price v. Wall, 464 F. Supp. 2d 90, 96 (D.R.I. 2006); see also LaFauci v. N.H. Dep't of Corr., No. 99-cv-597-PB, 2005 WL 419691, at *7

(D.N.H. Feb. 23, 2005) (unpublished order).  The Court considers each of these elements of Donlon's retaliation claim in turn.

A.   Petitioning the Government for Redress of Grievances

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  "[P]risoners retain the constitutional right to petition the government for the redress of grievances."  Turner v. Safley, 482 U.S. 78, 84 (1987) (citing Johnson v. Avery, 393 U.S. 483 (1969)).  In the prison context, inmates' First Amendment right to petition the government for redress of grievances includes the right to redress under established prison grievance procedures.  See Hightower v. Vose, 95 F.3d 1146 (unpublished table decision), 1996 WL 516123, *1 (1st Cir. 1996) (citing Sprouse, 870 F.2d at 452 and Franco, 854 F.2d at 589-90).

Donlon has alleged that he exercised his First Amendment right to petition the government for a redress of grievances by filing administrative grievances regarding his medical care at the HCHC.  Because Donlon's right to file grievances is protected by the First Amendment as an exercise of his right to petition the government to redress grievances, Donlon has

alleged sufficient facts to satisfy the first requirement of a
retaliation claim.

B.   Adverse Action

To state an adverse action, plaintiff must allege that the
defendants subjected him to "conduct that would deter a
similarly situated individual of ordinary firmness from
exercising his or her Constitutional rights." Dawes v. Walker,
239 F.3d 489, 492 (2d Cir. 2001), overruled in part on other
grounds by Phelps v. Kapnolas, 308 F.3d 180, 187 n.6 (2d Cir.
2002).  An adverse act must be more than de minimis to be
considered capable of deterring an inmate of ordinary firmness.
See Starr v. Dube, 334 F. App'x 341, *2 (1st Cir. 2009).  Even
if a particular inmate is not chilled in his expression, a claim
for retaliation may still arise if the retaliatory behavior
alleged is objectively sufficient and onerous to deter an
ordinary person from exercising his rights.  Gay v. Shannon, No.
02-4693, 2005 WL 756731, *8 (E.D. Pa. 2005) (citing Allah v.
Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Inmates do not maintain a right to be housed in any
particular security level.  See Neitzke v. Williams, 490 U.S.
319, 322 (1989); Bramson v. Winn, 136 F. App'x 380, 381 n.1 (1st
Cir. 2005).  Where, however, as is alleged here, the placement
into a restrictive housing situation as done in retaliation for

21

the exercise of a First Amendment right, the placement can be challenged in a § 1983 action asserting a First Amendment claim. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979).  Maximum security placement deprives Donlon of the ability to attend school, programming, law library, and religious bible study, and to order commissary food.  Donlon asserts that this move was particularly adverse to him because he is unable to obtain food from the commissary that he needs to regulate his own blood sugar when he cannot get timely medical help.  The Court finds that an inmate of ordinary firmness might well be chilled in his efforts to file administrative grievances if his efforts to do so were expected to result in a move to a restrictive housing unit where such privileges are unavailable.  Donlon, therefore, has stated sufficient facts to allege that adverse action was taken against him that would chill an ordinary inmate in his situation from exercising his First Amendment right to petition the government for a redress of grievances.[9]

---

[9]Dionne testified at the January 3 hearing, credibly in this Court's opinion, that he placed Donlon in maximum security so that the HCHC medical and security staff could better monitor Donlon's intake of foods, thereby guarding against another hospitalization for Donlon's disregulated blood sugar levels. Again, however, this court's assessment of the evidence at the preliminary hearing is not relevant on the limited question now before the court: whether Donlon's complaint states a claim for retaliation upon which relief might be granted.

C.   Retaliatory Action Caused by First Amendment Violation

Circumstantial evidence is often enough to support a claim that an adverse action was taken with retaliatory intent, as intentions are often difficult to prove through direct evidence. See Beauchamp v. Murphy, 37 F.3d 700, 711 (1st Cir. 1994); Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980) (chronology of events provided support for inference of retaliation); McDonald, 610 F.2d at 18 (same); see also Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Here, Donlon alleges that he was moved to maximum security on the heels of filing three or four grievances against the facility, and that he was moved at the behest of the people to whom the grievances were directed.[10] Although Donlon was told that he was being moved for eating a donut, the donut incident predated Donlon's transfer to maximum security by more than a week, and the grievances were filed in that intervening time period.  Accordingly, for purposes of preliminary review, the Court finds that Donlon has alleged the minimum facts necessary to assert that he was moved to maximum security by the defendants, acting with the intent to retaliate against him for filing grievances.  Donlon has therefore stated a retaliation claim upon which relief might be granted against

---

[10]Here, in the interest of judicial economy and fairness to a pro se party, the Court has supplemented the allegations in Donlon's complaint with information presented or conceded by Donlon at the hearing on Donlon's request for preliminary injunctive relief.

defendants Dionne, O'Mara, and Raymond.  In an Order issued
simultaneously with this Report and Recommendation, the Court
will direct service of this claim on those defendants.

IV.  <u>Due Process</u>

Donlon claims that he was transferred from the medical unit
to a more restrictive housing unit by Dionne without any hearing
or other process, and that when he tried to utilize the
institutional classification appeals process, he received no
response.  Donlon claims that he was entitled to some process
before he was moved, and that, once moved, he was entitled to
process that would enable him to challenge the appropriateness
of his maximum security classification.

Donlon, as a sentenced inmate, however, has no liberty
interest in not being transferred within the prison setting.
<u>See</u> <u>Young v. Harper</u>, 520 U.S. 143, 148 (1997).  Donlon,
therefore, has no right to any particular process before he is
transferred, as he has no protected liberty interest requiring
due process protection.  To be entitled to any process where no
recognized liberty interest exists, Donlon must demonstrate that
the state imposed a restraint on him which constituted an
"atypical and significant hardship on [Donlon] in relation to
the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515
U.S. 472, 484 (1995).  The Court cannot find that requiring

Donlon, a sentenced inmate, to spend time in a restrictive
housing unit, without more, imposes such a hardship.  Donlon's
due process claim, therefore, should be dismissed.

V.   Supplemental Jurisdiction

    Donlon has alleged a state law claim for negligence and
medical malpractice.  Because that claim does not pose a federal
question, see 28 U.S.C. § 1331, and because the parties are not
diverse, see 28 U.S.C. § 1332(a), the Court must, in order to
entertain the claim in this matter, exercise its supplemental
jurisdiction over that claim.  See 28 U.S.C. § 1367 (allowing
federal district court, in case where it already has original
jurisdiction, to exercise supplemental jurisdiction over state
claims "that are so related to claims in the action within such
original jurisdiction that they form part of the same case or
controversy").  Here, the Court has original jurisdiction over
the First Amendment retaliation claim and the Eighth Amendment
inadequate medical care claim.  At this stage of review, it
appears that Donlon's negligence claim is so related to those
federal claims that they form part of the same case or
controversy, as all of the claims arise out of the same
circumstances and transactions and involves essentially the same
parties.  In an Order issued simultaneously with this Report and
Recommendation, the Court will therefore direct service of the

25

medical malpractice claim against defendants Ryan, Masewic,
O'Mara and Dionne.

## Conclusion

For the foregoing reasons, the Court recommends dismissal
of the Due Process claim from the complaint.  In an Order issued
simultaneously with this Report and Recommendation, the Court
directs service of the complaint, containing Donlon's
retaliation, inadequate medical care, and negligence claims, on
defendants Ryan, Masewic, Dionne, O'Mara, and Raymond.

Any objections to this Report and Recommendation must be
filed within fourteen (14) days of receipt of this notice.  See
Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d
554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524
F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  February 4, 2011

cc:  Carolyn Kirby, Esq.
     Michael R. Donlon, pro se

LBM:jba